UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM DAVID BROWN,

      Applicant,

v.                               CASE NO. 8:16-cv-2393-T-60AEP

SECRETARY, Department of Corrections,

      Respondent.

_____/

## **O R D E R**

Brown applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for both murder in the first degree and robbery with a deadly weapon, for which convictions Brown is serving two consecutive life sentences. Numerous exhibits ("Respondent's Exhibit __") support the response. (Docs. 8; 11). The respondent admits both the application's timeliness and Brown's exhaustion of his available state court remedies. (Doc. 8 at 34-36).

## **I.    BACKGROUND**[1]

Brown was charged with (1) the murder and robbery of Ryan Keith Skipper and (2) arson and tampering with evidence for the attempted destruction of Skipper's car. Brown's co-defendant was Joseph Bearden.

---

[1] This summary of the facts derives from Brown's brief on direct appeal (Respondent's Exhibit B-1) and the parties' papers in this federal action. Additional facts are discussed below under each ground for relief.

Late in the evening of March 13, 2007, Bearden arrived at Brown's uncle's house, where Brown and others were present.  Bearden was driving a car that the others did not recognize.[2]  The car belonged to Skipper, who remained inside his car.  Bearden stated that he intended to rob Skipper at Skipper's house but could not because someone else was present.  When Brown and others went outside to the car, Skipper recognized Brown.  Skipper, accompanied by Brown and another, drove to a gas station to purchase fuel for a generator.  After that errand, Brown and Bearden left with Skipper in Skipper's car.

At 1:00 a.m. Skipper's body was found on the road in a dark area.  About 2:00 a.m. Daniel Aguero arrived at his home where he saw Bearden and Brown in front of his home with a car he did not recognize.  Daniel Aguero called his brother Robert Aguero (a former roommate with Bearden) to come over to get rid of Bearden.  When he arrived, Robert Aguero saw Bearden wiping down the floorboard of the car while Brown was standing beside the car.  Bearden offered to sell the car, which offer was declined.[3]

That morning Brown was overheard knocking on his uncle's window or door saying something to the effect that "I think I killed him or I killed him."  Later that afternoon a police officer recognized Brown riding a bicycle, stopped to question him,

---

[2] The failure to present Brown's uncle as a witness is the subject of Ground Five.

[3] Robert Aguero's testimony is the subject of Ground Seven.

and noticed that Brown seemed nervous.  Later that evening Skipper's partially burned

car was found at a boat ramp.[4]  Police preserved a shoe impression from the boat ramp.

Based on a tip, the next day (March 15th) the police went to Aguero's home,

where outside they found Skipper's school parking permit.  Another day later (March

16th), when a search warrant was executed at Brown's home, police found a boot that

matched the shoe impression from the boat ramp — the pair of boots were soaking in a

bucket that smelled of bleach.

In a statement to the police Brown (1) described how Bearden (from the

backseat) stabbed Skipper in the stomach, back, and throat, (2) stated that Skipper got

out of the car and fell into the street, (3) claimed that, when he checked on Skipper

laying in the street, he could see that Skipper was still breathing, and (4) admitted that

he got into the driver's seat and drove away.[5]

## II.   STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998).  Section 2254(d), which creates a highly deferential standard for federal court

review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —

---

[4]  Brown's fingerprints were on papers found inside the car.

[5]  Brown's statement to the police is the subject of Ground Eight.

> resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court
> proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), explains this deferential

standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue only if
> one of the following two conditions is satisfied — the state court
> adjudication resulted in a decision that (1) "was contrary to . . .
> clearly established Federal Law, as determined by the Supreme
> Court of the United States" or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined
> by the Supreme Court of the United States." Under the "contrary
> to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this Court
> on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's
> case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied by reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id*. The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Brown's convictions and sentence. (Respondent's Exhibit B-3). Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Brown's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit D-3). The state appellate court's *per curiam* affirmances warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Bishop v. Warden*, 726 F.3d 1243, 1255-56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a

"decision" or "ruling" and explaining that deference is accorded the state court's

"decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181-82, explains, review of the state court decision is

limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim on
> the merits. Section 2254(d)(1) refers, in the past tense, to a state-
> court adjudication that "resulted in" a decision that was contrary
> to, or "involved" an unreasonable application of, established law.
> This backward-looking language requires an examination of the
> state-court decision at the time it was made. It follows that the
> record under review is limited to the record in existence at that
> same time, i.e., the record before the state court.

Brown bears the burden of overcoming by clear and convincing evidence a state court's

fact determination.  "[A] determination of a factual issue made by a State court shall be

presumed to be correct.  The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

This presumption of correctness applies to a finding of fact but not to a mixed

determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).  The

state court's rejection of Brown's post-conviction claims warrants deference in this case.

(Respondent's Exhibits C-2, C-4, and C-6).  Brown's federal application presents the

same grounds of ineffective assistance of counsel that were presented to the state courts.

### III.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Brown claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *See Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Brown must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Brown must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. Brown cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*,

483 U.S. 776, 794 (1987)).   The required extent of counsel's investigation is discussed in

*Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to

raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Brown must prove that the state court's decision was

"(1) . . . contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States or (2) . . . based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."   Sustaining a claim of ineffective assistance of counsel is very

difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*,

562 U.S. at 105; *see also Pinholster*, 563 U.S. at 202 (An applicant must overcome this

"'doubly deferential' standard of *Strickland* and the AEDPA."); *Johnson v. Sec'y, Dep't of*

*Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a

petitioner to overcome, and it will be a rare case in which an ineffective assistance of

counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'").

## IV. <u>GROUNDS FOR RELIEF</u>

Three orders govern the review of Brown's nine grounds of ineffective assistance of counsel. The post-conviction court (1) summarily denied Grounds Two, Three, and Six without a response from the state, (2) denied Grounds Four, Five, and Seven after a response from the state, and (3) denied Grounds One, Eight, and Nine after an evidentiary hearing. (Respondent's Exhibits C-2, C-4, and C-6, respectively).

In the first order, which summarily denied three grounds, the post-conviction court did not cite *Strickland* as controlling a claim of ineffective assistance of counsel. Although the state court's order omits citing *Strickland*, no explicit citation is required. A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-86 (11th Cir. 2003). In Florida, *Strickland* governs an ineffective assistance of counsel claim. *Walls v. State*, 926 So. 2d 1156 (Fla. 2006). The state post-conviction court analyzed the three summarily denied ineffective assistance of counsel claims consistent with both Florida precedent and *Strickland* — not contrary to *Strickland* — by requiring proof of both deficient performance and prejudice. (Respondent's Exhibit C-2). In the next two orders denying the remaining

- 11 -

grounds, the post-conviction court recognized that *Strickland* governs a claim of ineffective assistance of counsel.  (Respondent's Exhibit C-4 and C-6).

Because the state court's rejections of the claims are either consistent with or pursuant to *Strickland*, Brown cannot meet the "contrary to" test in § 2254(d)(1).  Brown instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.

A federal habeas corpus action authorizes no independent determination of the reasonableness of counsel's actions but authorizes only a determination "whether the state habeas court was objectively reasonable in its *Strickland* inquiry, not an independent assessment of whether counsel's actions were reasonable."  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001).  Brown recognizes that this is the standard of review controlling this action (Docs. 2 at 10-11; 15 at 6-8), but he mostly ignores this standard and, for nearly every ground, asserts entitlement to relief under *Strickland* without attempting to show that the state court's application of *Strickland* was unreasonable.  Nevertheless, the highly deferential standard of review and the presumption of correctness govern.  The proper application of both the standard and the presumption requires that the analysis of each claim begin with the state court's analysis.

### A. <u>Claims of IAC Regarding the Jury</u>

Brown asserts five grounds of ineffective assistance of counsel that involve either an individual juror or the jury as a whole:  Ground One is based on an event that occurred after the jury was selected;  Grounds Two, Three, and Six involve the jury

selection process; and Ground Four challenges the validity of a jury instruction.  Each

ground is addressed approximately in order of occurrence.

**Ground Two:**

Brown alleges that trial counsel rendered ineffective assistance by not moving to

strike juror Bass both for cause and with a peremptory strike.  The state post-conviction

court rejected this claim as follows (Respondent's Exhibit C-2 at 405-06) (cites to the

record omitted):

> The Defendant alleges that counsel provided ineffective assistance
> when she failed to request that juror Bass be stricken for cause, or
> alternatively, failed to use a peremptory strike to ensure juror Bass
> did not serve as a juror on his case. The Defendant alleges that
> juror Bass equivocated about his ability to be fair and impartial.
>
> During *voir dire*, Mr. Bass indicated that he thought he had read
> something about the case in the newspaper on Saturday. He was
> asked what he remembered reading, and he answered, "Well, that
> the case was due to start today, and I think they briefly touched on
> the case prior to it and it had something in the article about the
> gay rights, thinking it should be a hate crime." Mr. Bass indicated
> that he couldn't recall the outcome of the co-defendant's case and
> indicated he thought he would be impartial. Mr. Bass was asked
> the following question by the Court, "As we sit here now, having
> heard no evidence, can you presume Mr. Brown to be innocent
> until and if it's overcome by the evidence." Mr. Bass answered,
> "Yes." Mr. Bass also informed the Court that he remembered
> reading something about the matter when it happened. He was
> asked if he remembered any specifics about what he read, and he
> answered, "No. Just basically, you know, the robbery; due to the
> fact that the victim was a gay, he was going to be an easy target."
> When Mr. Bass was asked by the Court whether or not he could
> put aside something he read and rely only on evidence the Court
> allowed in the trial, he responded, "I'm 99 percent sure I could."
> The Court also asked Mr. Bass the following question during *voir
> dire*, "Do you agree that at the end of the case when I give you the
> law, that that's the only law that applies to this case?" Mr. Bass
> answered, "Yes."
>
> According to the Fourth District Court of Appeal in *Jenkins v.
> State*, 824 So. 2d 977, 982 (Fla. 4th DCA 2002):

Proceedings under Rule 3.850 are not to be used as a second appeal. *See Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990). A lawyer's competence in failing to make a cause challenge should not be reviewed in a 3.850 proceeding in the same way that a denial of a cause challenge is reviewed on direct appeal. To do so is to undermine the trial process and to nullify the reasons for requiring a timely objection in the first place. Because a defendant must demonstrate prejudice in a 3.850 proceeding, post-conviction relief based on a lawyer's incompetence with regard to the composition of the jury is reserved for a narrow class of cases where prejudice is apparent from the record, where a biased juror actually served on the jury.

Although Mr. Bass expressed a little concern in his responses regarding his ability to completely set aside anything he might have learned about the case outside the courtroom through the media, the little information he seemed to have heard about the case was not extensive. His responses to the Court and counsel indicated he was going to do his best to consider only the evidence presented at trial, and he agreed to follow the law that would be provided to him by the Court. There is no indication on the record that Mr. Bass could not be fair and impartial, or that he was biased against the Defendant.

The Court does not find that there is any basis to conclude a challenge for cause would have had any chance of success, and the Court does not find that Mr. Bass's answers showed any compelling need to use a peremptory challenge. Counsel's performance did not fall below an objective standard of reasonableness in not trying to strike Mr. Bass from the jury through a cause challenge or preemptory challenge. Ground 2 of the Defendant's Motion is denied.

In his supporting memorandum Brown argues as follows (Doc. 2 at 16):

Juror Bass had a preconceived opinion based on what he had read in the newspaper, and he gave equivocal answers about his ability to be impartial. One of the cornerstone's [*sic*] of juror competency is that the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented at trial, which Juror Bass indicated that he could not do.

As shown above in the state court's order — "There is no indication on the record that Mr. Bass could not be fair and impartial, or that he was biased against the Defendant" — Brown's argument is a mischaracterization of the record.  The post-conviction court's determination — that "[c]ounsel's performance did not fall below an objective standard of reasonableness in not trying to strike Mr. Bass from the jury through a cause challenge or preemptory challenge — is based on Brown's failure to prove prejudice.

Although he disagrees with the state court's ruling, Brown presents no controlling precedent that shows the post-conviction court's ruling is an unreasonable application of *Strickland*.  Brown's arguments seek to have this federal court rule without any deference to the state court's rulings.  Because the state court ruled on the merits of this claim, review *de novo* would be contrary to the standard of review under § 2254(d); the purpose of federal review is not to re-try the state case.  *See Bell v. Cone*, 535 U.S. at 694 ("The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law.").

Brown fails to show that the state court unreasonably applied *Strickland* in determining that Brown failed to prove that trial counsel's performance was both deficient and prejudicial.  As a consequence, Brown is entitled to no relief under Ground Two.

**Ground Three:**

Brown alleges that trial counsel rendered ineffective assistance by not moving to strike juror Lineberger both for cause and with a peremptory strike. The state post-conviction court rejected this claim as follows (Respondent's Exhibit C-2 at 406-08) (cites to the record omitted):

> The Defendant alleges counsel failed to adequately *voir dire* juror Lineberger, failed to request that juror Lineberger be stricken for cause, and alternatively failed to use a peremptory strike to ensure juror Lineberger did not serve on the jury. The Defendant alleges that juror Lineberger equivocated about his ability to be fair and impartial. Defense counsel actually did use a peremptory strike on juror Lineberger, but later agreed to allow juror Lineberger to be the second alternate juror. Two jurors had to be excused during the trial and juror Lineberger ended up serving on the jury that returned a guilty verdict.
>
> The Defendant alleges in his Motion that juror Lineberger's wife was watching the news and related some things about the case to him. The following discussion took place between the Court and Mr. Lineberger during *voir dire*:
>
>> The Court: Mr. Lineberger, what's your wife's name?
>>
>> Venireman Lineberger: Cheryl.
>>
>> The Court: You evidently — where were you when
>>
>> Venireman Lineberger: Shall I tell the story?
>>
>> The Court: Uh-huh.
>>
>> Venireman Lineberger: Okay. Sunday night, I'm watching TV, football, and she's in there — in the next room, and she's giving me, oh, you're going to be on this murder trial, and she's in there checking it all out and I'm watching football going on and not paying a lot of attention. That's why I say I was disinterested. So I didn't really catch a whole lot there. So the next morning, Channel 9 comes on and she's in there, and I'm having my coffee, and she's [saying] you need to come look at this because

you're going to get this. And I'm saying, no, I'm not going to get this. And she rattled off a few pertinent items that, really, the only thing I know that you haven't told us is that the cohort has been tried and is incarcerated. Basically, that's all I know more than what you have explained."

The Court: Okay. I actually saw that. I was at the gym and on the treadmill and looked up and saw my courtroom. Let me start with the fact that the co-defendant in this case and Mr. Brown — Mr. Bearden and Mr. Brown are tried separately, and the evidence as to each and the guilt or innocence as to each is a separate issue.

Venireman Lineberger: Yes, Sir.

The Court: The fact that you know that — Bearden has been tried, does that — does that lead you to believe, well, if he was found guilty of something, then Mr. Brown must be guilty of something?

Venireman Lineberger: Guilt by association?

The Court: Sir?

Venireman Lineberger: Guilt by association?

The Court: Yeah.

Venireman Lineberger: All I can say is — I have no opinion at this time.

The Court: Okay. Given the fact that your wife told you that, do you think you can go into this with an open mind and look at Mr. Brown and presume him innocent?

Venireman Lineberger: Yes, sir. I have enough trial experience to be very open-minded.

The Court: Okay.

A review of the trial transcript shows that counsel thoroughly questioned Mr. Lineberger during *voir dire* regarding his ability to serve as an impartial juror. Based on his responses to the Court and counsel, there is no indication on the record that Mr. Line-

berger could not be fair and impartial, or that he was biased
against the Defendant. The Court does not find that there is any
basis to conclude a challenge for cause would have had any
chance of success, and the Court does not find that Mr. Line-
berger's answers showed any compelling need for counsel to stick
with her earlier decision to use a peremptory challenge on
Mr. Lineberger, to keep him from sitting on the jury.

Counsel's performance did not fall below an objective standard of
reasonableness with regard to her *voir dire* of Mr. Lineberger, her
failure to strike Mr. Lineberger from the jury through a cause
challenge, or her failure to keep Mr. Lineberger from serving on
the jury through the use of a preemptory challenge. Ground 3 of
the Defendant's Motion is denied.

The post-conviction court's determination — "that there is [no] basis to conclude

a challenge for cause would have had any chance of success, and . . . that Mr.

Lineberger's answers showed [no] compelling need for counsel to stick with her earlier

decision to use a peremptory challenge on Mr. Lineberger" — is consistent with federal

precedent to the extent that the post-conviction court reasonably deferred to trial

counsel's tactical decisions during jury selection.  *See, e.g., Teague v. Scott*, 60 F.3d 1167,

1172 (5th Cir. 1995) ("The attorney's actions during *voir dire* are considered to be a

matter of trial strategy."); *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997)

(same); *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000) (same); *see also Gardner v.

Ozmint*, 511 F.3d 420, 426 (4th Cir. 2007) (finding "entirely plausible the state court's

characterization of defense counsel's choice as 'tactical'" in choosing how to use

peremptory challenges).

Brown disagrees with the state court's rulings, but he presents no controlling

precedent that shows the post-conviction court's ruling is an unreasonable application

of *Strickland*.  Brown fails to show that the state court unreasonably applied *Strickland* in

determining that Brown failed to prove that trial counsel's performance was deficient. Consequently, Brown is entitled to no relief under Ground Three.

**Ground Six:**

To possibly assist the veniremen in recalling whether they knew anything about the incident, the trial court read to the venire a fact statement, which was written primarily by the state but with some input from the defense. Brown alleges that trial counsel rendered ineffective assistance by not objecting to the court's reading of the fact statement during *voir dire*. The state post-conviction court rejected this claim as follows (Respondent's Exhibit C-2 at 409-10) (cites to the record omitted):

> The Defendant alleges counsel's performance fell below an objective standard of reasonableness when she did not object to the Court reading a factual statement of the case prepared by the [State] during jury selection. The Defendant claims that the statement "served to improperly bolster the State's case, pre-try the State's case, and pre-dispose the jurors to the State's evidence.
>
> During jury selection the Court stated the following:
>
>> But I'm now going to read to you what is a fact statement alleged by the State to have occurred. Again, this is not evidence either, but I'm going to read this to you because it may trigger your memory better, and it lacks all the legalese that are in that Indictment and Information. And so if you know anything about this case, this may help trigger your memory. On March the 14th, 2007, Ryan Keith Skipper was found dead on Morgan Road in the Winter Haven/Wahneta area of Florida. Mr. Skipper had been stabbed multiple times. Mr. Skipper was a gay man and lived in Wahneta, Florida. Joseph Bearden . . . and William Brown, Junior, . . ." have been charged with the killing of Ryan Keith Skipper. Ryan Skipper's vehicle was found burned at Lake Pansey near the Winter Haven area.

The Court read the statement during jury selection a second time. The Defendant alleges that because the Court read the statement to the jurors, the jurors likely interpreted the court's instructions as proven facts lending more credibility to the State's case and allowing the State to pre-try their case.

The Court finds that counsel's performance did not fall below an objective standard of reasonableness in not objecting to the Court's reading of the statement, which was initially prepared by the State, but altered to some extent by input of counsel during discussions with the Court. Counsel insisted the statement say Mr. Skipper was found dead in the Winter Haven/Wahneta area and specify that the car was found burned at Lake Pansey. The Court finds that the statement concerned only matters which would come out at trial, and the statement was designed to trigger the memories of jurors as to whether they had any knowledge of the case. The Court does not find that the statement improperly bolstered the State's case or otherwise prejudiced the rights of the Defendant to a fair trial. Ground 6 of the Defendant's Motion is denied.

The post-conviction court's determination — "that counsel's performance did not fall below an objective standard of reasonableness in not objecting to the Court's reading of the statement" — is not an unreasonable deferral to counsel's strategic or tactical decision not to object. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices . . . are virtually unchallengeable."); *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) ("In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice.").

Consistent with the earlier grounds, (1) Brown disagrees with the state court's rulings, but he presents no controlling precedent showing that the post-conviction court's ruling is an unreasonable application of *Strickland*, and (2) contrary to the required standard of review, Brown's arguments seek to have this federal court rule *de novo* without any deference to the state court's rulings. Brown fails to show that the

state court unreasonably applied *Strickland* in determining that Brown failed to prove

that trial counsel's performance was deficient.   Consequently, Brown is entitled to no

relief under Ground Six.

**Ground One:**

Brown was on trial for (1) murder and robbery of Mr. Skipper, as charged in

Case No. CF-07-2100-XX, and (2) arson and tampering with evidence (the partial

burning of Mr. Skipper's car), as charged in Case No. CF08-00581-XX.   After the

state's opening statement — during which the jury was told that Brown's fingerprints

were found on papers inside the victim's car and a shoe impression from one of his

boots was found near the car — Brown pleaded guilty to the arson and tampering

charges.   Thereafter, trial resumed for the murder and robbery charges.

Brown alleges that trial counsel rendered ineffective assistance by allowing the

trial judge to inform the jury that Brown pleaded guilty to both the arson and the

tampering with evidence charges.   After holding an evidentiary hearing on this claim,

the state post-conviction court rejected this claim as follows (Respondent's Exhibit C-6

at 585-86) (cites to the record omitted):

> In Ground 1 of his Motion, the Defendant alleges, "Trial counsel
> rendered inept and unprofessional representation when she
> allowed the court to inform the jury of the Defendant's guilty plea
> to arson and tampering charges which prejudiced the Defendant."
> The Defendant asserts that the record indicates that the Court read
> the Information for Case No. CF08-008511-XX, charging the
> Defendant with Arson and Tampering with Evidence, twice
> during *voir dire*; and the Court mentioned it again after the jury
> was sworn in. After the State gave its opening statements, the
> Defendant entered a plea of guilty to Arson and Tampering with
> Evidence in Case No. CF08-008511-XX. Defense counsel advised
> the Court that she did not object to the Court telling the jury that
> the Defendant has entered a plea to those charges. The Court

advised the jury, "Ladies and gentlemen, while you were on recess, Mr. Brown entered a plea of guilty to the two-count information. The first count in that information was the charge of arson, and the second count was tampering with physical evidence, and I accepted his plea of guilty on those two counts. That leaves you in charge of the case of first degree murder and robbery."

The Defendant alleges that the jury became aware of the Defendant's guilty plea to Arson and Tampering, which exceeded what the jury was entitled to know. The Defendant alleges, "The Arson and Tampering charges addressed the damage to the victim's car, and thus, those charges directly linked the Defendant to the murder and robbery of the victim, which prejudiced the Defendant because there was no physical evidence that linked the Defendant to the scene of the murder." The Defendant alleges the fact that the Defendant had entered guilty pleas to Arson and Tampering in Case No. CF08-008511-XX would not have been admissible had defense counsel not agreed to inform the jury about the pleas. The Defendant further alleges that the State highlighted the guilty pleas during closing arguments.

At the evidentiary hearing, Ms. Wells [(defense counsel)] testified that her opinion was that the Defendant was going to be found guilty of the Arson and Tampering charges based on his statement to law enforcement, and he would gain credibility with the jury if he admitted guilt to those charges. Ms. Wells testified that she discussed the matter with the Defendant about a week before trial. Ms. Wells also testified that prior to the Defendant's actual entry of the plea it was her practice to make sure it was still the Defendant's intention to enter the guilty plea. Ms. Wells testified that in her discussions with the Defendant she would have discussed the matter of letting the jury know about the guilty plea to the two charges to gain credibility with them, and she stated that if the Defendant had not agreed with this tactic that she would not have proceeded with that tactic. She said that they wanted the jury to know that Mr. Brown was accepting responsibility for the things that he had done, but this did not include First-degree Murder or Robbery.

Mr. Brown testified at the hearing that his counsel did not talk with him about letting the jury know about his guilty plea to the other charges. The Court finds Ms. Wells testimony that she discussed the guilty plea and its ramifications with the Defendant to be highly credible.

A review of the Court file, including Mr. Brown's statement to law enforcement, the fact that Mr. Brown's fingerprints were found on papers in the burned automobile, and the fact that a shoe impression of the Defendant was found near the burned automobile, clearly showed Mr. Brown's involvement with the burning of the Defendant's car. The Court agrees with Ms. Wells that Mr. Brown was clearly going to be found guilty of the arson and tampering charges, and it was a reasonable tactical decision to gain credibility with the jury by the Defendant taking responsibility for those crimes in the hopes of not being found guilty of First-Degree Murder and Robbery. Trial counsel's strategic decision in this regard was carefully considered, reasonable under the norms of professional conduct, and did not constitute ineffective assistance. *See Occhione v. State*, 768 So. 2d 1037 (Fla. 2000).

Additionally, the Court finds that the Robbery, Murder, Arson, and Tampering were inextricably intertwined as part of the same criminal episode and no motion *in limine* would have been successful to keep the information about the arson and tampering from the jury. *See Parker v. State*, 142 So. 3d 960 (Fla. 4th DCA 2014). Counsel's performance did not fall below an objective standard of reasonableness with regard to Ground 1 of the Defendant's Motion. Ground 1 of the Defendant's Motion is denied.

The post-conviction court's credibility determination — the acceptance of trial counsel's testimony over Brown's — is a finding of fact that binds this court. Under 28 U.S.C. § 2254(e)(1), a federal court must defer to the state court's findings of fact, and this deference applies to a credibility determination that resolves conflicting testimony, as *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011), explains:

Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983). We consider questions about the credibility and demeanor of a witness to be questions of fact. *See Freund v. Butterworth,* 165 F.3d 839, 862 (11th

> Cir. 1999) (*en banc*). And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*See also Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].").

The required deference is heightened when reviewing a credibility determination in a § 2254 application. *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007); *accord Kurtz v. Warden, Calhoun State Prison*, 541 F. App'x 927, 929 (11th Cir. 2013) ("'A certain amount of deference is always given to a trial court's credibility determinations,' and a credibility determination in a case on habeas review receives heightened deference.") (quoting *Gore*). Brown presents no basis for rejecting the state court's credibility determination. [6]

Also, the post-conviction court's determination that counsel employed a reasonable trial tactic — that "it was a reasonable tactical decision to gain credibility with the jury by the Defendant taking responsibility for those crimes in the hopes of not being found guilty of First-Degree Murder and Robbery" — is consistent with federal

---

[6] In his reply Brown presents the following argument (Doc. 15 at 9):

[C]ounsel had no recollection of any specific conversation with Petitioner regarding her decision to tell the jury information they should not have known, and Petitioner testified she never discussed it with him and never gave him an option to disagree with her decision. Thus, counsel's equivocal testimony cannot be considered a refutation of Petitioner's specific recitation that he was not told of counsel's strategy.

This argument ignores the presumption of correctness afforded a state court's credibility determination.

precedent.  *See Florida v. Nixon*, 543 U.S. 175, 184 (2004) (brackets original) ("The evidence of guilt 'would have persuaded any jury . . . beyond all doubt,' and '[f]or trial counsel to have inferred that Mr. Nixon was not guilty . . . would have deprived [counsel] of any credibility during the penalty phase.'") (quoting the trial judge); *Darden v. United States*, 708 F.3d 1225, 1230 (11th Cir. 2013) ("Defense counsel would reasonably find it strategically advantageous to concede guilt on [unwinnable] charges to preserve credibility in defending against the others").  Furthermore, counsel's choice of tactic did not require Brown's agreement.  *Nixon*, 543 U.S. at 187 (trial counsel is not required to obtain the defendant's consent to every tactical decision); *Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988) (trial counsel has authority to manage most aspects of the defense without obtaining the defendant's concurrence); *see also Strickland*, 466 U.S. at 690 ("[S]trategic choices . . . are virtually unchallengeable."); *Provenzano v. Singletary*, 148 F.3d at 1332 ("In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice."); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).

Although Brown opines that "the court's denial of this claim was contrary to or an unreasonable application of Federal constitutional law" (Doc. 15 at 10), Brown cites no supporting Supreme Court precedent as required under § 2254(d).  Brown fails to show that the state court unreasonably applied *Strickland* in determining that Brown failed to prove that trial counsel's performance was deficient.  Consequently, Brown is entitled to no relief under Ground One.

**Ground Four:**

Brown alleges both that the trial court erroneously instructed the jury on "manslaughter by intentional act" and that trial counsel rendered ineffective assistance by not objecting to the erroneous jury instruction.  After considering the state's response, the state post-conviction court rejected this claim as follows (Respondent's Exhibit C-4 at 471-73) (cites to the record omitted):

> In Ground 4 of his Motion, the Defendant alleges, "'The Defendant is entitled to a new trial because his conviction was obtained contrary to Florida law where the trial court erroneously instructed the jury on manslaughter by intentional act, a necessary lesser charge, and where the Supreme Court recently pronounced for the first time, that such error violates the Defendant's rights to a fair trial, alternately, trial counsel rendered inept and unprofessional representation when she failed to object to the giving of the manslaughter instruction, which prejudiced the Defendant and denied him the constitutional right to have the jury accurately instructed on the law."
>
> At the Defendant's trial the jury was given the following instruction on Manslaughter:
>
> > 7.7 MANSLAUGHTER
> > F.S. 782.07
> >
> > To prove the crime of Manslaughter, a lesser included crime of Count 1 of the Indictment, the State must prove the following two elements beyond a reasonable doubt:
> >
> > 1. RYAN KEITH SKIPPER is dead.
> > 2. WILLIAM D. BROWN, JR. intentionally caused the death of RYAN KEITH SKIPPER.
> >
> > However, the Defendant cannot be guilty of manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.
> >
> > In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the

> Defendant had a premeditated intent to cause death, only an intent to commit an act which caused death.

The Defendant not only argues that the jury instruction is erroneous and contrary to Florida Law, but alleges that counsel was ineffective for failing to object to the Court giving this manslaughter Instruction. Trial counsel is not deemed to be ineffective for allowing the Court to read the Standard Instruction in use at that time. *See Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000).

In *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010), the Florida Supreme Court discussed *Pena v. State*, 901 So. 2d 781 (Fla. 2005), and the significance of being improperly instructed on a lesser included offense one step removed versus two steps removed from the crime of which the Defendant is convicted. The Florida Supreme Court stated:

> Second-degree murder as a lesser included offense is one step removed from first-degree murder, and manslaughter as a lesser included offense is two steps removed from first-degree murder. In *Pena* we concluded that "when the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is not *per se* reversible, but instead is subject to a harmless error analysis." *Pena*, 901 So. 2d at 787. We explained that the significance of the two-steps-removed requirement is more than merely a matter of number or degree. A jury must be given a fair opportunity to exercise its inherent "pardon" power by returning a verdict of guilty as to the next lower crime. If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.

In this case the Defendant was convicted of First Degree Murder and Robbery with a deadly weapon. Manslaughter is two steps removed from first-degree murder. The jury had the option [of] finding the Defendant guilty of Second Degree Murder but did not do so. The Court finds that it is mere speculation by the Defendant that the outcome of the trial would have been any different but for the faulty Manslaughter instruction that was given to the jury. Ground 4 of the Defendant's Motion is denied.

In his reply Brown "agrees that his conviction is two steps removed, and because of that fact, the giving of the erroneous manslaughter instruction would not be considered fundamental error." (Doc. 15 at 13). Brown next argues that "the State has not conclusively refuted Petitioner's allegation that the giving of the erroneous instruction could not be considered harmless error beyond a reasonable doubt under the circumstances of this case." (*Id.*). Once again, this shows Brown's avoidance of the required standard of review in a federal habeas action. The respondent (or state) does not bear the burden of proving anything beyond a reasonable doubt; the applicant (Brown) bears the burden of proving that the state court's ruling is an unreasonable application of controlling Supreme Court precedent.

Whether the post-conviction court misapplied *Montgomery* is beyond the scope of federal review because a federal habeas court does not sit as an appellate court over a state court. "Federal habeas courts . . . do not grant relief, as might a state appellate court, simply because the [jury] instruction may have been deficient in comparison to the [state's] model [jury instruction, and] the fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *accord Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017) ("]I]t is not a federal court's role to examine the propriety of a state court's determination of state law.").

As *McGuire* explains, "[t]he only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Brown asserts that

"the instruction given interfered with the jury's deliberative process in a way that tainted the underlying fairness of the trial, and because the ailing instruction so infected the entire trial, the resulting conviction violates due process." (Doc. 15 at 14). Although he cites *McGuire* (Doc. 2 at 20), Brown provides no analysis — or at least whatever analysis can be garnered from the briefs is cursory — to show that the state court's rejection of his claim was unreasonable. *Renico v. Lett*, 559 U.S. 766, 773 (2010), explains:

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S. Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S. Ct. 1495.

Brown fails to meet his burden of showing that the state court unreasonably applied *Strickland* in determining both that trial counsel's performance was not deficient and that Brown was not prejudiced by the erroneous jury instruction. Consequently, Brown is entitled to no relief under Ground Four.

## B.  Claims of IAC During Trial

Brown alleges three grounds of ineffective assistance of counsel based on counsel's acts during trial: Ground Five faults counsel for not calling a witness, Ground Seven faults counsel for her cross-examination of a witness, and Ground Eight faults counsel for the way she dealt with the testimony of two police officers. Each ground is addressed approximately in order of occurrence.

**Ground Seven:**

During a lengthy proffer outside the presence of the jury, state's witness Robert Aguero admitted to having eight convictions for either a felony or a crime involving dishonesty. When trial resumed, Mr. Aguero admitted that he presently resided in prison, but neither the prosecutor nor defense counsel asked Mr. Aguero about his criminal record. Brown alleges that trial counsel rendered ineffective assistance by not cross-examining Mr. Aguero about his prior convictions. After considering the state's response, the state post-conviction court rejected this claim as follows (Respondent's Exhibit C-4 at 474) (cites to the record omitted):

> The Defendant alleges that there was a big discussion about how to ask questions about Mr. Aguero's prior record. Counsel indicated on the record that she needed a recess to obtain certified copies of Mr. Aguero's convictions. The Defendant alleges, "Mr. Aguero proffered the testimony outside of the presence of the jury, and when he was asked, '[I]sn't it true that you've been convicted of a felony or crime involving dishonesty eight prior times?' he responded, 'maybe around that — around there. I'm not — I'm not for sure." Counsel commented that she was happy with his answer.

> When Mr. Aguero testified at the trial, counsel did not ask Mr. Aguero if he had any convictions. The Defendant alleges that, "With Robert Aguero's testimony, the State attempted to link Mr. Bearden [(the co-defendant)] with the Defendant and the victim's car and the fact that the Defendant was present when Mr. Bearden was wiping down the floorboard of the car and when he asked if he would get rid of the car for him, and when they returned with Chico." The Defendant further alleges, "Had counsel obtained the convictions prior to trial and impeached Mr. Aguero there is a reasonable probability that the outcome of the trial would have been different because the jury could have taken the priors into consideration in deciding whether to believe Mr. Aguero's testimony, in a case that turned on the credibility of the witnesses."

> Although counsel for the Defendant did not point out how many convictions Mr. Aguero had, Mr. Aguero testified to the jury that

> he was residing in a prison. It is pure speculation that had the jury
> been aware of eight convictions the outcome of the trial might
> have been different. The Court does not find that counsel's
> performance fell below an objective standard of reasonableness
> with regard to the Defendant's claims in Ground 7 of his Motion.
> Additionally, to the extent counsel could be considered to have
> acted deficiently in not bringing out that Mr. Aguero had eight
> convictions, the Court finds that there is no reasonable basis to
> assume the result of the proceedings might have been different but
> for such a deficiency. Ground 7 of the Defendant's Motion is
> denied.

The post-conviction court determined that counsel's performance was not

deficient — "the Court does not find that counsel's performance fell below an objective

standard of reasonableness" — and even if it was deficient, the performance was not

prejudicial — "the Court finds that there is no reasonable basis to assume the result of

the proceedings might have been different." The respondent explains why the

performance, even if deficient, was not prejudicial: "Aguero's testimony was limited to

Mr. Bearden and Brown's coming to his home with Skipper's car to clean it and try to

sell it to him — all things Brown admitted to in his recorded and unrecorded statements

and pleas." (Doc. 8 at 65). So even if Aguero's credibility was diminished, the

substance of the testimony was independently supported by Brown's recorded

admissions.

Brown fails to show that the state court unreasonably applied *Strickland* in

determining that Brown failed to prove that trial counsel's performance was deficient

and, even if deficient, that Brown was prejudiced. Consequently, Brown is entitled to

no relief under Ground Seven.

**Ground Eight:**

Brown alleges that trial counsel rendered ineffective assistance in handling the testimony of two police officers, specifically, by not objecting, by eliciting inadmissible testimony, and by not moving to exclude inadmissible testimony. After holding an evidentiary hearing on this claim, the state post-conviction court rejected this claim as follows (Respondent's Exhibit C-6 at 586-88) (cites to the record omitted):

> The Defendant asserts, "The record reveals that Deputy Bellamy testified [that,] as he was riding around on Rifle Range Road on March 14, 2007, he saw the Defendant on a bicycle and he 'recognized this person' because he worked in the area for approximately 90% of his career at the Sheriff 's Office. Rather than objecting to the Deputy's testimony, during cross-examination, defense counsel asked the Deputy about the acronym COPS, which stood for Community Oriented Policing Section, and he stated it is an assignment to a smaller area. When counsel asked him "are they typically begun in communities where there are issues, like high drug issues or things like that?" and he responded, "yes, ma'am." Regarding the Deputy's contact with the Defendant, counsel asked him, "and the nervous behavior, isn't that also consistent with methamphetamine use?" and the Deputy responded, "yes." Counsel further asked, "when you saw Mr. Brown and you asked to search him, you were looking for narcotics, right?" and the Deputy stated, "that would have been probably my focus, yes ma'am."
>
> The Defendant also alleges, "Subsequently, during the cross-examination of Deputy Ripke, counsel continued her erroneous solicitation, "the behavior that you saw and described to the jury that Mr. Brown was exhibiting, was it just as consistent with a methamphetamine user?" and he responded, "I couldn't say if it is or not, ma'am. I really wouldn't speculate on that."
>
> The Defendant points out that following Deputy Bellamy's testimony the State pointed out that counsel seemed to be eliciting other crimes being committed by the Defendant. The Defendant alleges, "Defense counsel's response was to blame the State for asking objectionable questions about the Defendant's nervous behavior and how the Deputy knew the Defendant, despite the fact that counsel failed to object to any of the State's questions. Counsel also attempted to justify her improper solicitation of

evidence by stating the evidence of the Defendant's meth use was going to come out in his recorded statement to law enforcement." The Defendant further alleges counsel could have requested a motion *in limine* to exclude such evidence from the Defendant's statement as inadmissible collateral crimes evidence.

The Defendant argues that absent counsel's error the State would not have been able to introduce that the Defendant had used methamphetamines and was known by law enforcement to be a drug user. The Defendant asserts that this testimony from Deputy Bellamy likely influenced the jury to rely upon the bad character evidence as evidence of guilt of the charged crime.

At the evidentiary hearing, Ms. Wells testified that information about methamphetamine use and drug use was going to come out through the witnesses and from Mr. Brown's statement to law enforcement. She testified that the State was interested in making it look like the nervous behavior of the Defendant when confronting law enforcement was an indication of guilt because of the murder of Mr. Skipper. Ms. Wells testified that it was important to show that there could have been another reason having to do with drug use that would be consistent with the Defendant's behavior. She testified that at the jail she would have discussed allowing the jury to know about his drug use during the trial.

Mr. Brown testified at the evidentiary hearing that Ms. Wells did not discuss the disclosure of his drug use to the jury with him. The Court finds that Ms. Wells's testimony that she discussed the matter of the Defendant's drug use and its relationship to his defense with him to be highly credible.

When Mr. Brown entered his plea of guilty to the Arson and Tampering charges, the trial Court asked him the following question: "Without telling me any discussions you have with your attorney, which I'm not entitled to know and don't want to know, but you do believe after discussing this with her, from a strategy standpoint with your part of the trial, you believe that [t]his plea is in your best interest? Mr. Brown responded "Yes, sir."

The use of drugs was inextricably intertwined with the criminal episode that resulted in the murder, robbery, arson, and tampering charges and the Court does not find that a motion *in limine* would have been successful with regard to keeping this evidence from the jury. *See Parker v. State*, 142 So. 3d 960 (Fla. 4th DCA 2014). Additionally, the Court finds that the defense strategy regarding presenting the jury with another reason for the Defendant's

- 33 -

> nervous and evasive behavior, other than consciousness of guilt of
> a murder, was a reasonable tactical decision. Trial counsel's
> strategic decision in this regard was carefully considered, and
> reasonable under the norms of professional conduct and did not
> constitute ineffective assistance. *See Occhione v. State*, 768 So.2d
> 1037 (Fla. 2000). The Court does not find that counsel's
> performance fell below an objective standard of reasonableness
> with regard to Ground 8 of the Defendant's Motion. Ground 8 of
> the Defendant's Motion is denied.

The post-conviction court determined that trial counsel's performance was not

deficient because (1) "the defense strategy regarding presenting the jury with another

reason for the Defendant's nervous and evasive behavior, other than consciousness of

guilt of a murder, was a reasonable tactical decision," and (2) "counsel's strategic

decision in this regard was carefully considered and reasonable under the norms of

professional conduct." Brown contends that trial counsel's decision was unreasonable,

but he fails to argue — much less meet his burden of proof[7] — that the state court's

ruling is unreasonable. The post-conviction court's determination was not

unreasonable; to the contrary, it was a very reasonable determination because counsel

was offering the jurors a justification for Brown's nervousness apart from the murder of

Mr. Skipper.

Brown fails to show that the state court unreasonably applied *Strickland* in

determining that Brown failed to prove that trial counsel's performance was deficient.

Consequently, Brown is entitled to no relief under Ground Eight.

---

[7] *Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

## Ground Five:

Brown alleges that trial counsel rendered ineffective assistance by not

investigating and calling as a witness Brown's uncle, J.T. Brown, whose testimony

Brown contends would have impeached a state witness.  After considering the state's

response, the state post-conviction court rejected this claim as follows (Respondent's

Exhibit C-4 at 473-74) (cites to the record omitted):

> The Defendant alleges that counsel, "failed to investigate and call
> J.T. Brown to testify, who was a material witness that was
> available to testify." The Defendant alleges that the State used
> witness John Kirchoff to try and link the Defendant to a
> discussion by Mr. Bearden about robbing the victim. The
> Defendant argues that J.T. Brown would have testified that he was
> never woken up by Mr. Kirchoff to talk to the Defendant on
> March 14. The Defendant alleges [J.T.] Brown's testimony would
> have impeached the trial testimony of key witness, Mr. Kirchoff.
>
> Mr. Kirchoff testified at the trial that he heard Mr. Bearden say
> something about robbing the victim, Mr. Skipper, and Mr. Brown
> was present. Mr. Kirchoff also testified that when [Mr.] Brown
> arrived at the house on the morning of the 14th he was nervous
> and upset. He testified that Mr. Brown said something about
> burning a car at a boat ramp and Mr. Brown said something like,
> "I think I killed him or I killed him." Mr. Kirchoff was asked how
> he reacted to that statement, and Mr. Kirchoff testified that he
> went and woke up Mr. Brown's uncle, J.T. Brown.
>
> The Defendant argues that J.T. Brown would have testified that he
> was never woken up by Mr. Kirchoff to talk to the Defendant on
> March 14. The Defendant alleges [J.T.] Brown's testimony would
> have impeached the trial testimony of key witness, Mr. Kirchoff. It
> is not clear to what extent testimony from Mr. J.T. Brown would
> have impeached Mr. Kirchoff's testimony. The statements that
> the Defendant complains about were made prior to the time
> Mr. Kirchoff says that he woke up J.T. Brown. Testimony by
> J.T. Brown that Mr. Kirchoff did not wake him up is not very
> compelling, and the Court does not find that the Defendant has
> shown that J.T. Brown's testimony was likely to make any
> difference in the outcome of the trial. The Defendant has not
> shown that his counsel's performance fell below an objective

standard of reasonableness in not calling J.T. Brown as a witness. Ground 5 of the Defendant's Motion is denied.

The post-conviction court determined that counsel's performance was (1) not deficient — Brown "has not shown that his counsel's performance fell below an objective standard of reasonableness in not calling J.T. Brown as a witness," and (2) not prejudicial — Brown "has [not] shown that J.T. Brown's testimony was likely to make any difference in the outcome of the trial." Although he disagrees with both determinations, Brown does not show that both determinations are unreasonable.

Brown fails to show that the state court unreasonably applied *Strickland* in determining that Brown failed to prove that trial counsel's performance was both deficient and prejudicial. Consequently, Brown is entitled to no relief under Ground Five.

**Ground Nine:**

Brown alleges that the cumulative effect of trial counsel's errors "produced a fundamentally flawed trial." (Doc. 1 at 27). The post-conviction court rejected this claim as follows (Respondent's Exhibit C-6 at 588):

> In Ground 9 of his Motion, the Defendant alleges, "The cumulative effect of counsel's deficient performance prejudiced the Defendant." This claim appears to be based on the cumulative effect of counsel's errors argued in Grounds 1-8 of the Defendant's Motion. The Court did not find that counsel's performance fell below an objective standard of reasonableness with regard to any of the grounds raised by the Defendant, and the Court does not find that the cumulative effects of the alleged deficiencies meet the *Strickland* Standard. Ground 9 of the Defendant's Motion is denied.

The post-conviction court's ruling is consistent with federal precedent. Brown can prove cumulative error only by showing two or more errors. "Without harmful

errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*,

733 F.2d 842, 852 (11th Cir. 1984); *see also Conklin v. Schofield*, 366 F.3d 1191, 1210

(11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors]

and determine whether, viewing the trial as a whole, [the applicant] received a fair trial

as is [his] due under our Constitution."); *Lucas v. Warden, Georgia Diagnostic &*

*Classification Prison*, 771 F.3d 785, 802 (11th Cir. 2014) ("We are equally unpersuaded

that the cumulative effect from Lucas's *Strickland* and *Brady* claims entitles him to

relief.") (citing *Conklin*).  Because each individual claim of error lacks merit, Brown

shows no cumulative prejudicial effect.  *See Mullen v. Blackburn*, 808 F.2d 1143, 1147

(5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if

adopted, would encourage habeas petitioners to multiply claims endlessly in the hope

that, by advancing a sufficient number of claims, they could obtain relief even if none of

these had any merit.  We receive enough meritless habeas claims as it is; we decline to

adopt a rule that would have the effect of soliciting more and has nothing else to

recommend it.  Twenty times zero equals zero.").

  Brown fails to show that the state court unreasonably applied *Strickland* in

determining that Brown failed to prove that trial counsel's performance was deficient.

Consequently, Brown is entitled to no relief under Ground Nine.

## V.    CONCLUSION

  Brown fails to meet his burden to show that the state court's decision was either

an unreasonable application of controlling Supreme Court precedent or an

unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013),

recognizes, an applicant's burden under § 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Brown's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The

clerk must enter a judgment against Brown and **CLOSE** this case.

**DENIAL OF BOTH
A CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Brown is not entitled to a certificate of appealability ("COA").  Under §

2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute entitlement to

appeal a district court's denial of his application.  Rather, a district court must first issue

a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a

substantial showing of the denial of a constitutional right."  To merit a COA, Brown

must show that reasonable jurists would find debatable both the merits of the

underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926,

935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate the

merits of the claims, Brown is entitled to neither a COA nor leave to appeal *in forma pauperis.*

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Brown must obtain permission from the circuit court to appeal *in forma pauperis.*

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 28th day of May, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**